IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER LYONS,

                Petitioner,   REPORT AND
RECOMMENDATION

v.

                08-cv-331-slc

BRADLEY HOMPE, Warden,
Stanley Correctional Institution,

                Respondent.

---

REPORT

Before me for report and recommendation to the district court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 brought by Christopher Lyons, an inmate at the Stanley Correctional Institution. Petitioner was convicted on March 22, 2002 in the Eau Claire County Circuit Court of repeated sexual assault of the same child, for which he is serving an 8-year prison sentence and 12 years of extended supervision. Petitioner alleges that he is in custody in violation of his constitutional rights to due process and confrontation because the trial court failed to appoint him a sign language interpreter or otherwise accommodate his hearing impairment. Because the state courts did not apply clearly established federal law in an unreasonable manner or make unreasonable determinations of fact in denying petitioner's claim, I am recommending that the court deny the petition.

Although I have drawn some facts from the petition and documents attached to respondent's answer, I have relied primarily on the state circuit court and appellate court decisions to find the following facts:

## I. FACTS

Petitioner was charged with repeated sexual assault of his adopted daughter in November 2000. At the preliminary hearing held on February 6, 2001, he had some difficulty hearing the proceedings. Petitioner pleaded not guilty on February 21, 2001. At an April 3, 2001 status conference, petitioner appeared pro se and requested a court-appointed attorney and an Exact English Sign Language interpreter. Petitioner advised the court that "if you use a microphone, I can hear just fine." Dkt. 18, Exh. 13 at ¶ 2. The circuit court told petitioner that if the case proceeded to trial, there would be a microphone and it could arrange for an interpreter if necessary. On November 5, 2001, the state dismissed the original charge against petitioner and recharged him with the same offense.

At a February 21, 2002 motion hearing, petitioner was represented by appointed counsel. He requested an interpreter for trial. The circuit court judge asked petitioner to try the active listening device (ALD) in one of the courtrooms and stated that "if we could do that, I'd prefer it because it's a lot less expensive than the sign language interpreter, but if we can't and you can't

2

hear, then, certainly, you have a right to that."[1]  Dkt. 18, Exh. 4 at 4; dkt. 19, Pt. 5 at 32-34. Petitioner used the ALD at the two-day trial held in March 2002.  *Id.* at ¶ 3.

At the beginning of the jury trial, petitioner advised the court that he had some difficulty hearing.  However, adjusting the volume on the ALD headphones appeared to resolve the problem.  During his testimony, petitioner asked the attorneys to repeat some of their questions, but he never complained to the trial court about any inconvenience.  *Id.* at ¶ 4.

The state's primary witness at trial was the victim, who testified that petitioner repeatedly assaulted her.  The state also presented other acts evidence that petitioner beat his stepdaughter with a belt.  During cross examination the following exchange took place:

> Prosecutor: Did you ever discipline your daughter by striking her with a belt?
>
> Petitioner: Not during these allegations, no.
>
> . . .
>
> Prosecutor: Did you beat your daughter with a belt ever?
>
> Petitioner: No.

Dkt. 18, Exh. 8 at ¶ 3.  In her closing argument, the prosecutor urged the jury to resolve the credibility dispute between petitioner and the victim in part based on petitioner's inconsistent answers about beating her with a belt.  *Id.* at ¶ 4.

---

[1]  I note that the court of appeals incorrectly identified this exchange as occurring at a June 22, 2001 status conference.  However, the trial court decision and relevant court transcripts show that this discussion took place on February 21, 2002.

Petitioner filed a postconviction motion in the circuit court, alleging in relevant part that the trial court inadequately accommodated his hearing impairment in violation of his constitutional rights to due process and confrontation. Specifically, he argued that he did not hear correctly the prosecutor's question about beating his stepdaughter with a belt, creating an apparent inconsistency in his testimony. Petitioner requested an evidentiary hearing. In support of his motion, petitioner included the results of a 1998 hearing evaluation performed by the University of Wisconsin-Eau Claire Department of Communications Disorders, which found that he had fair speech discrimination in his right ear, poor speech discrimination in his left ear and hearing loss even with amplification. Dkt. 18, Exh. 4 at 2-3 and Exh. 8 at ¶¶ 4-5.

On December 22, 2003, the circuit court denied petitioner's motion without a hearing, finding that his hearing impairment did not result in his inability to hear the proceedings fully, and if it did, petitioner had waived his right to raise the issue. The court noted that petitioner had appeared before the court on many occasions prior to trial and had no difficulty hearing or understanding the proceedings. It also found that petitioner had no trouble speaking up to the court or conferring with his attorney during any pretrial hearings or at trial. Dkt. 18, Exh. 4 at 2-7. Petitioner appealed.

On December 28, 2004, the Wisconsin Court of Appeals reversed and remanded the matter for a hearing on the interpreter issue. The appellate court determined that petitioner's seemingly inconsistent answers given within moments of each other created a plausible claim that petitioner did not hear the question correctly. Therefore, the court of appeals found that

4

if true, petitioner's allegations satisfied the minimal requirements for an evidentiary hearing. Dkt. 18, Exh. 8 at ¶ 1, 7 and Exh. 13 at ¶ 6.

Multiple witnesses testified at the June 17, 2005 hearing on remand. Attorney David Czech, who had represented petitioner in a CHIPS matter, testified that he had observed the entire criminal trial and recalled a number of times that petitioner's behavior led him to believe that petitioner had difficulty hearing.[2] Czech stated that he had not used an interpreter during his own meetings with petitioner. He also testified that at a hearing in the CHIPS case, petitioner used the ALD and had stopped the proceeding to tell the court when he could not hear. Dkt. 18, Exh. 13 at ¶ 7.

Petitioner testified that when he tried the ALD at the start of trial, only he, Attorney John Bachman (defense counsel) and a court employee were in the room. He alleged that he was not told how to use the device or to turn off his hearing aids and that he had told Bachman that he still was going to have problems hearing. Petitioner explained that he tried on the headphones while standing at the counsel tables, but not on the witness stand, where he stated that he had the most difficulty hearing. He testified that the microphones on the witness stand picked up extraneous noises like shuffling paper. Petitioner said that he did not want to bring his inability to hear to the court's attention because he was embarrassed about his impairment.

---

[2] A review of the actual hearing transcript shows that Czech stated that on a number of occasions throughout the trial, he saw petitioner look at him or his other attorney and shake his head. Czech thought that petitioner did this because he did not hear something. Dkt. 19, Pt. 15 at 9-16.

5

He also said that Bachman was not approachable. Bachman testified that he did not recall the courtroom experiment with the ALD, but if petitioner had told him that the ALD headphones were not working, he would have notified the court. He also testified that petitioner did not need an interpreter during any of their out of court meetings. *Id.* at ¶¶ 8, 11, 13.

Petitioner testified that at trial, he did not hear the prosecutor's second question about having ever beat his stepdaughter with a belt. He stated that is he had heard that question properly, he would have responded that he had but that he stopped after he was told during counseling related to his stepdaughter's treatment for attention deficit hyperactivity disorder (ADHD) that corporal discipline was inappropriate. Dkt. 18, Exh. 9 at 6.

Ryan Hummel, an audiologist, testified that petitioner had a significant hearing impairment but that he should have been able to hear if the ALD system was set at its maximum capacity. Per Forsberg, the owner of the company that installed the listening devices at the courthouse, testified that the system is designed to assist people with a moderate hearing loss who do not use a hearing aid. Dkt. 18, Exh. 13 at ¶¶ 9-10.

On October 28, 2005, the circuit court rejected petitioner's claims as not credible, noting that although petitioner admitted to experimenting with the ALD, Bachman did not recall him having any trouble with it and he never conveyed his concerns to the court. The court noted that there were multiple occasions when petitioner had no reservations about letting the court know that he had hearing trouble, including at jury selection in front of the prospective jurors. The court also had advised the jury at the start of trial that petitioner was wearing headphones

6

to facilitate his hearing. *Id.* at ¶ 14; dkt. 18, Exh. 9 at 2-6. With respect to petitioner's cross examination, the circuit court found that petitioner thought the two questions about him beating his stepdaughter with a belt were the same. The court noted that during the remand hearing, it became evident that petitioner did not understand a court ruling on the admissibility of the corporal punishment evidence. Based on petitioner's testimony and its discussion with his appellate counsel, the court found that he "heard the questions and he answered them as he thought was appropriate given his understanding of the court rulings." Dkt. 18, Exh. 9 at 7-8. Therefore, the circuit court determined that it was a lack of communication about the court's evidentiary ruling and not petitioner's hearing impairment that caused petitioner to answer the question in the way he did. *Id.*

The circuit court also found that because petitioner failed to make known his alleged need for an interpreter, the court did not have to appoint one or determine whether petitioner expressly waived his right to one. Specifically, it stated:

> Unless the defendant makes his need known, there is no ability for the Court to engage in a colloquy with the defendant. . . . If the defendant indeed couldn't hear, he had a responsibility to make the need known.

Dkt. 18, Exh. 9 at 5.

In a decision issued on August 29, 2006, the court of appeals found that although the trial court incorrectly determined that petitioner was required to request an interpreter, *see State v. Yang*, 201 Wis. 2d 725, 734-35, 549 N.W.2d 769 (Ct. App. 1996) (when court *aware* of hearing impairment, it must determine whether impairment will impede defendant's

7

understanding of proceedings or communication with counsel), that error was harmless because the trial court implicitly concluded prior to trial that no interpreter was necessary because it had asked petitioner to experiment with the ALD and advised him that he had a right to an interpreter if the device did not work for him. In the alternative, the court of appeals found that the record supported the conclusion that no interpreter was necessary. Petitioner never complained about the ALD, even when the trial court questioned him about it in chambers prior to voir dire. At trial, the court suggested that petitioner adjust the headphone volume and asked petitioner if he was able to hear. Petitioner responded yes. He also said yes when his attorney asked him if he could hear on the witness stand. Further, both Bachman and Czech testified that petitioner never told them that he had difficulty hearing either in the courtroom or in communications with them outside of court. The appellate court also determined that neither Hummel's or Forsberg's testimony established that petitioner needed an interpreter. Noting that there was only a due process right to a *necessary* interpreter, the appellate court did not reach the question of whether petitioner's due process right was violated or whether he waived that right. *Id.* at ¶ 15-21.

      The Wisconsin Supreme Court denied the petition for review on March 14, 2007. Dkt. 18, Exh. 15. Petitioner filed his habeas petition in this court on June 5, 2008. Although this court dismissed the petition on July 2, 2008 for failure to prosecute because petitioner failed to pay a filing fee, dkt. 8, this court reinstated it on July 17, 2008, dkt. 11.

## II. ANALYSIS

### A. Legal Framework

Pursuant to 28 U.S.C. § 2254(d), this court must accord special deference to the conclusion reached by the state court of appeals. Specifically, this court may not grant petitioner's application for a writ of habeas corpus unless the state court's adjudication of his claims

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" federal law when the state court applies a rule that "contradicts the governing law set forth by the Supreme Court," or when an issue before the state court "involves a set of facts materially indistinguishable from a Supreme Court case," but the state court rules in a different way. *Boss v. Pierce*, 263 F.3d 734, 739 (7th Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Under § 2254(d)(2), a federal court can disagree with a state court's factual determination and overturn it if the decision was objectively unreasonable or incorrect. *Miller-El v. Cockrell*, 537, U.S. 322, 340 (2003); *Baird v. Davis*, 388 F.3d 1110, 1124 (7th Cir. 2004). However, "the level of deference given state court factual findings on habeas review is exceptionally high." *Baird*, 388 F.3d at 1124 (citing *Lindh v.*

9

*Murphy*, 521 U.S. 320, 333 n.7 (1997)). In fact, under § 2254(e)(1), the state court's findings of fact are presumed correct, and it is petitioner's burden to rebut that presumption with clear and convincing evidence. *Id.*

**B. Constitutional Right to an Interpreter**

The United States Supreme Court has yet to recognize a constitutional right to a court-appointed interpreter. *United States v. Johnson*, 248 F.3d 655, 663 (7th Cir. 2001). "Rather, the Supreme Court has stated that the decision of whether or not to appoint an interpreter 'is a matter largely resting in the discretion of the trial court.'" *Phillips v. Miller*, 2000 WL 33650803, at *9 (S.D.N.Y. Dec. 3, 2000) (quoting *Perovich v. United States*, 205 U.S. 86, 91 (1907)). Only a handful of federal circuits have addressed this issue. *Id.* In 1985, the Court of Appeals for the Seventh Circuit held that a defendant in a criminal proceeding is denied due process when: (1) what is told him is incomprehensible; (2) the accuracy and scope of a translation at a hearing or trial is subject to grave doubt; (3) the nature of the proceeding is not explained to him in a manner designed to insure his full comprehension; or (4) a credible claim of incapacity to understand due to language difficulty is made and the court fails to review the evidence and make appropriate findings of fact. *U.S. v. Johnson*, 248 F.3d 655, 663 (7th Cir. 2001); *U.S. v. Cirrincione*, 780 F.2d 620, 634 (7th Cir. 1985). In short, a criminal defendant must be able to comprehend the proceedings against him. *U.S. ex re. Nieves v. Gramley*, 1999 WL 967019, *3 (N.D. Ill. Oct. 6, 1999).

10

Wisconsin has imposed a similar requirement. "When a trial court is put on notice that the accused has a language difficulty, the court must make a factual determination whether the language disability is sufficient to prevent the defendant from communicating with his attorney or reasonably understanding the . . . testimony at the preliminary hearing or trial." *State v. Neave*, 117 Wis. 2d 359, 375, 344 N.W.2d 181, 188-89 (1984), *overruled on other grounds by State v. Koch*, 175 Wis. 2d 684, 499 N.W.2d 152 (1993); *see also* Wis. Stat. § 885.37(1)(b) (codifying same).

The state court of appeals found that no interpreter was necessary in petitioner's case. Although it did not reach the issue of due process or cite federal case law in its decision, it did not have to. "[A] state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [the Supreme Court's] opinions." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (*per curiam*). Indeed, a state court need not even be aware of Supreme Court precedent "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*. (*quoting Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*)). The appellate court's reasoning demonstrates that it considered petitioner's allegation of a hearing impairment credible and reviewed the relevant evidence and made appropriate findings of fact regarding the necessity of an interpreter. *See Cirrincione*, 780 F.2d at 634. Specifically, the court of appeals found that the trial court implicitly concluded prior to trial that no interpreter was necessary because it had asked petitioner to experiment with the ALD and advised him that he had a right to an interpreter if the device did not work for him. The court also found that any error

11

committed by the trial court was harmless because the record clearly showed that petitioner did not need an interpreter. Neither of these findings contradicts federal law, and the state courts' decisions are supported by the evidence of record.

At the hearing on the postconviction motion, petitioner testified that he was not told how to use the ALD properly and when he took the witness stand at trial, he did not fully hear the questions asked of him. Petitioner testified that he did not tell anyone about the problem at the time because he was embarrassed and his trial attorney was not approachable. The circuit court discounted this testimony because petitioner had no problem alerting the court to his hearing trouble during pretrial proceedings and jury selection. The trial court instead relied on testimony from petitioner's attorneys that he had never complained about being unable to hear during out of court proceedings or while using the ALD at trial.

The state appellate court deferred to the trial court's credibility finding and determined that it had properly assessed petitioner's ability to hear the proceedings. The court of appeals found that apart from identifying a problem during voir dire, petitioner never complained about the ALD. In fact, when asked by the trial court judge whether he was able to hear, petitioner said yes. He also stated on the witness stand at trial that he could hear his attorney's questions. At the postconviction motion hearing, the owner of the company that installed the ALD testified that the system is designed to assist people with a moderate hearing loss who do not use a hearing aid. Petitioner uses hearing aids and alleges that he was not told to turn them off while using the ALD. However, the appellate court found that this fact in and of itself does not

12

establish that petitioner needed an interpreter. Further, the court noted that the audiologist testified that even though petitioner has a significant hearing impairment, he should have been able to hear while using the ALD at its maximum volume.

The above are factual findings to which this court must defer unless petitioner comes forth with "clear and convincing evidence" showing that the state court determination was erroneous. *Hinton v. Uchtman*, 395 F. 3d 810, 819 (7th Cir. 2005); *Ward v. Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003). Petitioner has no such evidence. The evidence he presents to support his claim consists of the same allegations that the state courts rejected as incredible, namely that he could not understand the pretrial proceedings or questions asked of him at trial during direct and cross examination. As he did in the state courts, petitioner alleges that he failed to alert the trial court about his trouble hearing because he already had asked for an interpreter, did not want to appear stupid and had told his trial attorney, who did not raise the issue with the court.

Petitioner has not pointed to any specific portion of the pretrial proceedings that he did not hear or understand or to anything in the transcripts that supports his conclusory assertion that he did not fully understand the proceedings. In fact, a review of the relevant transcripts in this case shows that petitioner was able to understand the proceedings adequately and had no problem alerting either the court or his attorney when he failed to hear testimony or a question.

At the preliminary hearing, petitioner's attorney told the court that petitioner was having difficulty hearing the victim's testimony. Petitioner alleges that the trial court asked him leading

13

questions, trying to get him to answer yes. However, the transcript of the proceeding shows that the court was very responsive to petitioner's difficulty hearing and made every effort to resolve the problem:

> Defense attorney: . . . My client is having trouble hearing. . . .
>
> Court: [To witness] Victorea, I'm going to have you move a little bit closer to the microphone, and then what you need to do - - maybe you can pull that microphone over towards her more.
>
> Prosecutor: They've got it as far as it can go.
>
> Court: Why don't you switch chairs. There you go. Okay. Why don't you do a favor for me, and I want you to talk into the microphone like you would in a normal voice. Okay. Go ahead. Just say anything you would like.
>
> . . .
>
> Witness: Yes.
>
> Prosecutor: Is that loud enough?
>
> Court: Yeah. That should do it. You can hear that, can't you?
>
> Defendant: Yes, sir.

*Id.* Although the judge may have assumed that petitioner could hear after the adjustments were made, he still asked petitioner whether he could hear. There is no indication that the court was dismissing or overlooking petitioner's problem.

At the April 2001 status conference, petitioner had no difficulty hearing when he appeared pro se and questioned the court about appointing counsel for him and allowing him to appear by phone for future pretrial proceedings. Petitioner requested an interpreter for future

14

proceedings because he had trouble hearing if more than one person was talking. However, he stated that he could hear just fine if the court used a microphone. Dkt. 19, Pt. 2 at 50-60. Although petitioner later requested an interpreter for trial, he agreed to try the ALD headphones. Moreover, the court made clear that if he could not hear using the headphones, he certainly had a right to an interpreter. Dkt. 19, Pt. 5 at 32-34.

With respect to the trial, petitioner alleges that he did not properly hear the prosecutor's questions about beating his stepdaughter with a belt and, therefore, gave what appeared to be inconsistent responses, from which the jury could have concluded that he was lying. The circuit court found this allegation not credible because during the remand hearing, it became evident to the court that petitioner did not understand a pretrial ruling on the admissibility of the corporal punishment evidence. A review of petitioner's testimony at trial and the remand hearing supports this finding. On remand, petitioner explained that he understood the court's pretrial ruling as permitting only questions about corporal punishment to the extent that they related to the alleged sexual abuse. Petitioner responded "no" to the second question because he thought that the question *should be* asking him only about his use of corporal punishment during the period of alleged sexual abuse. Dkt. 19, Pt.17 at 31-32. Therefore, it was reasonable for the circuit court to conclude that a lack of communication about the court's evidentiary ruling and not petitioner's hearing impairment caused him to answer the question in the way he did.

15

There is no other evidence showing that petitioner did not understand the trial proceedings. Although petitioner alleges that after testing the headphones, he told Bachman that he was still going to have problems hearing, Bachman did not recall such a conversation. Petitioner also points out that at the remand hearing, Czech (his CHIPS attorney) testified that in observing petitioner's criminal trial, he saw petitioner shake his head on a number of occasions, leading him to believe that petitioner had difficulty hearing. However, Czech admitted that this was mere speculation. Petitioner never told him, Bachman or the court that he was continuing to have problems hearing. In fact, a review of petitioner's trial testimony shows that he either correctly heard the questions asked of him or asked the attorney to repeat the question. Further, the trial court, which had the benefit of observing petitioner, saw nothing to indicate that he could not hear or understand the proceedings.

Finally, petitioner argues that the state court erred in not securing a knowing and voluntary waiver of his constitutional rights under the due process and confrontation clauses. *See Illinois v. Rodriguez*, 497 U.S. 177, 183 (1990). However, as discussed above and noted by the state court of appeals, petitioner does not have a constitutional right to an interpreter. He only has a right to hear and understand the proceedings against him. Because the state courts reasonably determined that petitioner could understand the proceedings with the help of the ALD, they did not err in failing to address whether he knowingly and voluntarily waived his right. In other words, because petitioner was not deprived of a constitutional right, he could not have waived one.

In sum, the evidence supports the state courts' conclusion that, notwithstanding petitioner's hearing impairment, he was able to hear and understand the proceedings against him. Accordingly, I find that the state appellate court did not apply clearly established federal law in an unreasonable manner or make unreasonable determinations of fact in denying petitioner's claim.

RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B), I respectfully RECOMMEND that the petition of Christopher Lyons for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

Entered this 30th day of November, 2008.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge

17

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin 53701

Chambers of
STEPHEN L. CROCKER
U.S. Magistrate Judge

Telephone
(608) 264-5153

December 1, 2008

Christopher D. Lyons #426828
New Lisbon Correctional Institution
P.O. Box 4000
New Lisbon, WI 53950-2000

William Gansner, Assistant Attorney General
Wisconsin Department of Justice
PO Box 7857
Madison, WI 53707-7857

Re:    Lyons v. Hompe; Case No. 08-cv-331-slc

Dear Counsel:

The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before December 15, 2008, by filing a memorandum with the court with a copy to opposing counsel.

If no memorandum is received by December 15, 2008, the court will proceed to consider the magistrate judge's Report and Recommendation.

Sincerely,


Melissa Hardin
Secretary to Magistrate Judge Crocker

Enclosures
cc:    Honorable Barbara B. Crabb, District Judge

18

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

    (1) injunctive relief;

    (2) judgment on the pleadings;

    (3) summary judgment;

    (4) to dismiss or quash an indictment or information;

    (5) to suppress evidence in a criminal case;

    (6) to dismiss or to permit maintenance of a class action;

    (7) to dismiss for failure to state a claim upon which relief can be granted;

    (8) to dismiss actions involuntarily; and

    (9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation. Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth

with particularity the bases for these objections. An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection. Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects. The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection. The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions. The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.** *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).